1

2

3

4

5              UNITED STATES DISTRICT COURT

6              NORTHERN DISTRICT OF CALIFORNIA

7

8   WALTER JEFFERSON,                          No. C-12-0926 EMC

9          Plaintiff,

10         v.                                   **ORDER GRANTING IN PART AND
                                                DENYING IN PART DEFENDANTS'**
11  CITY OF FREMONT, *et al.*,                  **MOTION TO DISMISS SECOND
                                                AMENDED COMPLAINT**
12         Defendants.
    _____/   **(Docket No. 55)**
13

14

15         Plaintiff Walter Jefferson has filed suit against Defendants the City of Fremont, the Fremont

16  Tennis Center ("FTC"), and several employees of the FTC, asserting claims under federal and state

17  law for, *inter alia*, discrimination. Currently pending before the Court is Defendants' motion to

18  dismiss the second amended complaint ("SAC"). Having considered the parties' briefs, as well as

19  the oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part Defendants'

20  motion.

21                  **I.    FACTUAL & PROCEDURAL BACKGROUND**

22         In the SAC, Mr. Jefferson alleges as follows. Mr. Jefferson is an African American man.

23  *See* SAC ¶ 4. Starting in the 1980's, Mr. Jefferson used the Fremont Tennis Center ("FTC"), which

24  is a public park. *See* SAC ¶¶ 6, 18. Mr. Jefferson never experienced any problems at the FTC until

25  Defendant Jeff Gonce became the Tennis Director of the FTC. *See* SAC ¶¶ 7, 18.

26         After Mr. Gonce became the Tennis Director, Mr. Jefferson began to be harassed by

27  employees of the FTC, including Defendants Joe Grech, Annabelle Holland, and Kelly King. *See*

28  SAC ¶¶ 8-10, 18. For example, Ms. Holland and Mr. King threatened to call the police on Mr.

*United States District Court*
For the Northern District of California

1  Jefferson, even though there was no cause. *See* SAC ¶ 18. Mr. Grech leveled threats against Mr.

2  Jefferson (both in person and on the phone), again without any cause. *See* SAC ¶¶ 18, 34. There

3  was also an incident in which the lights on Mr. Jefferson's court were turned off "while all

4  surrounding courts remained lit." SAC ¶ 18. The SAC, however, does not specify who was

5  responsible for that alleged harassment. Allegedly, Mr. Gonce was aware or should have been

6  aware of the discrimination or harassment but did nothing to stop it. *See* SAC ¶¶ 22, 34.

7  After being harassed, Mr. Jefferson made a complaint against Mr. Gonce. *See* SAC ¶ 19.

8  The SAC does not specify when Mr. Jefferson made the complaint. It also does not specify what the

9  substance of the complaint against Mr. Gonce was. In any event, Mr. Jefferson claims that, in

10  response to the complaint, Mr. Gonce made "racially offensive epithets towards [him]" and

11  threatened to terminate the employment of City employees who associated with Mr. Jefferson and

12  "his multicultural team." SAC ¶ 19. Furthermore, in November 2011, Mr. Gonce changed FTC

13  policies so that he would have "exclusive, undivided control over who would be permitted to

14  contract for use of [the] FTC." SAC ¶ 19. This gave Mr. Gonce the ability to refuse to contract with

15  Mr. Jefferson – which he did – while, at the same time, Mr. Gonce gave contracts to similarly

16  situated persons outside the protected class. *See* SAC ¶¶ 19, 29.

17  Mr. Jefferson maintains that the City is liable in addition to the individual defendants

18  because (1) it has a policy or custom that allows its employees to arbitrarily and capriciously modify

19  FTC policy (which ultimately led to his being denied the right to contract to use the FTC) and (2) it

20  failed to train its employees. *See* SAC ¶¶ 31-32.

21  Based on, *inter alia*, the above allegations, Mr. Jefferson has asserted the following claims

22  for relief:

23  (1)  Violation of Title II of the Civil Rights Act of 1964, which provides that "[a]ll

24  persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges,

25  advantages, and accommodations of any place of public accommodation . . . without discrimination

26  or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a.

27  (2)  Violation of the California Civil Code § 51, which provides that "[a]ll persons within

28  the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion,

**United States District Court**
For the Northern District of California

2

**United States District Court**
For the Northern District of California

1   ancestry, national origin, [and so forth] are entitled to the full and equal accommodations,

2   advantages, facilities, privileges, or services in all business establishments of every kind

3   whatsoever." Cal. Civ. Code § 51(b).

4      (3)  Violation of 42 U.S.C. § 1981, which provides that "[a]ll persons within the

5   jurisdiction of the United States shall have the same right in every State and Territory to make and

6   enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

7      (4)  Violation of 42 U.S.C. § 1983, which provides that "[e]very person who, under color

8   of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or

9   causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof

10  to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall

11  be liable to the party injured in an action." 42 U.S.C. § 1983.

12     (5)  Negligent hiring or supervision (against the City only).

13            **II.  DISCUSSION**

14  A.  Legal Standard

15     Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the

16  failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to

17  dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks*

18  *Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court

19  must take all allegations of material fact as true and construe them in the light most favorable to the

20  nonmoving party, although "conclusory allegations of law and unwarranted inferences are

21  insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir.

22  2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough

23  facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when

24  the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

25  defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see*

26  *also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to

27  a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted

28  unlawfully." *Iqbal*, 129 S. Ct. at 1949.

United States District Court

For the Northern District of California

B.     Title II of the Civil Rights Act

As noted above, Title II of the Civil Rights Act provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin."  42 U.S.C. § 2000a.  Title II further provides that

> [n]o person shall (a) withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive, any person of any right of privilege secured by section 201 or 202 [42 U.S.C. §§ 2000a, 2000a-1,] or (b) intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person with the purpose of interfering with any right or privilege secured by section 201 or 202 [42 U.S.C. §§ 2000a, 2000a-1], or (c) punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 201 or 202.

*Id.* § 2000a-2.  The essence of Mr. Jefferson's Title II claim is that he was treated poorly at the FTC, a place of public accommodation, and ultimately denied the right to use the FTC because of his race. In their motion, Defendants argue that this claim should be dismissed because there are insufficient allegations that any of Defendants acted with a racially discriminatory intent.

As to Ms. Holland and Mr. King, Defendants are correct.  In the SAC, Mr. Jefferson alleges that Ms. Holland and Mr. King threatened to call the police on him, even though there was no cause. See SAC ¶ 18.  But there are no allegations that Ms. Holland and Mr. King took these actions because of Mr. Jefferson's race.

As to Mr. Grech, the Court also finds dismissal appropriate.  The Court acknowledges that it is a closer call as to whether there are allegations that Mr. Grech took actions because of Mr. Jefferson's race. *See, e.g.*, SAC ¶ 34.  However, because there is some ambiguity in ¶ 34 of the SAC as pled as to whether it was Mr. Grech or Mr. Gonce who made racial slurs against Mr. Jefferson, the Court concludes that a dismissal of the claim to be proper.  Mr. Jefferson is granted leave to amend to state a claim of race-based animus against Mr. Grech.

The Court denies the motion to dismiss the Title II claim against Mr. Gonce.  Mr. Jefferson has made adequate allegations of racial animus – *e.g.*, Mr. Gonce's use of racial epithets and his

4

**United States District Court**

For the Northern District of California

1   disparate treatment of Mr. Jefferson and other similarly situated persons outside of Mr. Jefferson's

2   protected class.  *See* SAC ¶ 19.

3   As for the City, the Court notes that Defendants have not made any specific argument as to

4   why the Title II claim should be dismissed and, accordingly, the Court makes no ruling on the claim

5   as asserted against the City.

6   For the foregoing reasons, the Court shall dismiss the Title II claim only to the extent it is

7   asserted against Ms. Holland, Mr. King, and Mr. Grech.  Mr. Jefferson has leave to amend the Title

8   II claim as against these individuals.  The Title II claim against Mr. Gonce and the City shall be

9   permitted to proceed.

10   To the extent Defendants have made an alternative request for relief – *i.e.*, a request for a

11   more definite statement – the Court grants that request.  Mr. Jefferson shall amend his complaint to

12   provide a more definite statement as to what policies purportedly gave Mr. Gonce "exclusive,

13   undivided control over who would be permitted to contract for use of [the] FTC."  SAC ¶ 19.

14   C.    42 U.S.C. § 1981

15   Under § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same

16   right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."

17   42 U.S.C. § 1981(a).  For a § 1981 claim, a plaintiff must show that "(1) [he] is a member of a

18   protected class, (2) [he] attempted to contract for certain services, and (3) [he] was denied the right

19   to contract for those services." *Lindsey v. SLT L.A., LLC*, 447 F.3d 1138, 1145 (9th Cir. 2006).  The

20   plaintiff must also show that he "'was deprived of services while similarly situated persons outside

21   the protected class were not.'" *Id.*  The Ninth Circuit has indicated that the last element may be

22   relaxed in certain circumstances – *i.e.*, the plaintiff need only show that he "'received services in a

23   markedly hostile manner and in a manner which a reasonable person would find objectively

24   discriminatory.'" *Id.* (stating that it need not decide whether the fourth element could be relaxed but

25   also noting that it found the Sixth Circuit's reasoning as to why it could be relaxed "compelling").

26   In the instant case, Defendants argue that the § 1981 claim should be dismissed because all

27   that Mr. Jefferson has done is recite the elements of the cause of action – *i.e.*, he has not pled any

28   specific factual allegations to support those elements.  Defendants' argument is not persuasive.  It is

5

**United States District Court**
For the Northern District of California

1   not clear what additional specificity Defendants believe should be there.  Mr. Jefferson has

2   essentially alleged that he is African American, that he tried to contract for use of the FTC, and that

3   he was denied the right to use the FTC while similarly situated persons outside his protected class

4   were not.

5          That being said, the Court does find problematic the § 1981 claim as pled against the

6   individual defendants other than Mr. Gonce.  For the individual defendants other than Mr. Gonce,

7   there are no real allegations that they denied him (or had the power to deny him) the right to contract

8   for the use of the FTC.  Instead, the allegations focus on the improper conduct of Mr. Gonce alone.

9   *See, e.g.*, SAC ¶ 19 (alleging that, after Mr. Jefferson "complained about the new policies, GONCE

10  refused to contract with [him] for use of FTC, refused to accept payment as consideration for [his]

11  use of FTC, contemporaneously barred [him] from assembling at and/or using FTC, informed [him]

12  that he was not welcome at FTC and instructed [him] to find another location to play") (emphasis

13  added).

14         As for the City, it cannot be held liable on a respondeat superior theory because of Mr.

15  Gonce's action.  Like a § 1983 claim against a municipality, a § 1981 claim against a municipality

16  may be brought only where the plaintiff's injury was the result of an official policy or custom.  *See*

17  *Federation of African Am. Contrs. v. City of Oakland*, 96 F.3d 1204, 1205 (9th Cir. 1996) (holding

18  that, for a § 1981 claim against a municipality, a plaintiff must allege that the injury was caused by

19  an official policy or custom, just with a § 1983 claim).  However, because Mr. Jefferson alleges that

20  Mr. Gonce was the final policymaker for the City, see SAC ¶ 33 (alleging that "GONCE is the

21  person responsible for establishing final policy with respect to contracting for use of FTC"), then

22  there does appear to be a basis for municipal liability.  As the Ninth Circuit has noted, "a

23  municipality can be liable for an isolated constitutional violation when the person causing the

24  violation [in the case at bar, Mr. Gonce] has 'final policymaking authority.'"  *Christie v. Iopa*, 176

25  F.3d 1231, 1235 (9th Cir. 1999).  The Court notes, however, that this is the only theory of municipal

26  liability articulated by Mr. Jefferson that appears viable.  There are insufficient allegations to

27  support a theory of municipal liability based on, *e.g.*, ratification or deliberate indifference.

28         Accordingly, the Court dismisses the § 1981 claim as pled against Ms. Holland, Mr. King,

United States District Court

For the Northern District of California

1  and Mr. Grech.  Mr. Jefferson has leave to amend.  The § 1981 claim as pled against Mr. Gonce and

2  the City shall be permitted to proceed.

3  D.       42 U.S.C. § 1983

4          Under § 1983, "[e]very person who, under color of any statute, ordinance, regulation,

5  custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the

6  United States or other person within the jurisdiction thereof to the deprivation of any rights,

7  privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in

8  an action."  42 U.S.C. § 1983.  In his SAC, Mr. Jefferson seems to assert that he was deprived only

9  of (1) his right to contract and (2) his right to assemble.  *See, e.g.*, SAC ¶¶ 31, 35.

10         To the extent Mr. Jefferson is asserting a claim based on his right to contract, that is

11 essentially duplicative of his § 1981 claim.  Accordingly, the analysis above on the § 1981 claim

12 applies.

13         To the extent Mr. Jefferson is asserting a claim based on his right to assemble, see U.S.

14 Const., amend. 1 (providing that "Congress shall make no law . . . abridging . . . the right of the

15 people peaceably to assemble"), Defendants argue that "neither playing tennis, nor a desire to

16 associate with tennis players and members of the public, are activities protected by the First

17 Amendment.  They do not qualify as a form of 'intimate association,' or a form of 'expressive

18 association' as those terms have been defined by the Supreme Court."  Reply at 7.  As to this

19 argument, Defendants are correct.  *See Grace United Methodist Church v. City of Cheyenne*, 451

20 F.3d 643, 658 (10th Cir. 2006) (stating that "[t]he First Amendment protects associational and

21 assembly rights in two distinct ways: 'First, the Court has held that the Constitution protects against

22 unjustified government interference with an individual's choice to enter into and maintain certain

23 intimate or private relationships[;] [s]econd, the Court has upheld the freedom of individuals to

24 associate for the purpose of engaging in protected speech or religious activities"); *Bikur Cholim, Inc.*

25 *v. Village of Suffern*, 664 F. Supp. 2d 267, 277 (S.D.N.Y. 2009) (noting that the First Amendment

26 right of the people peaceably to assemble "embraces two types of associational rights: (1) intimate

27 human relationships, and (2) association for purposes of engaging in protected speech").

28

**United States District Court**
For the Northern District of California

1   As to the first kind of associational rights, "[t]he First Amendment, while not expressly

2   containing a 'right of association,' does protect 'certain intimate human relationships.'" *Freeman v.*

3   *City of Santa Ana*, 68 F.3d 1180, 1188 (9th Cir. 1995). That is, it "protects those relationships,

4   including family relationships, that presuppose 'deep attachments and commitments to the

5   necessarily few other individuals with whom one shares not only a special community of beliefs but

6   also distinctly personal aspects of one's life.'" *Board of Directors of Rotary Int'l v. Rotary Club of*

7   *Duarte*, 481 U.S. 537, 545 (1987). As to the second kind of associational rights, "implicit in the

8   right to engage in activities protected by the First Amendment [is] a corresponding right to associate

9   with others in pursuit of wide variety of political, social, economic, education, religious and cultural

10  ends." *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984). *See Boy Scouts of Am. v. Dale*,

11  530 U.S. 640, 648 (2000) (noting that "[t]he First Amendment's protection of expressive association

12  is not reserved for advocacy groups[;] [b]ut to come within its ambit, a group must engage in some

13  form of expression, whether it be public or private'").

14  But there is no authority that suggests the First Amendment's protection of "the right of the

15  people peaceably to assemble," U.S. Const., amend. 1, would extend to the situation before the

16  Court – *i.e.*, "to associate with other [tennis] players and members of the general public [at the

17  FTC]." Opp'n at 6. *See, e.g.*, G*ibson v. Florida Legis. Investig. Comm.*, 372 U.S. 539, 562 (1963)

18  (noting that "'[p]eaceably to assemble' as used in the First Amendment necessarily involves a

19  coming together, whether regularly or spasmodically[;] historically, the right to assemble was

20  secondary to the right to petition, the latter being the primary right[,] [b]ut today, . . . '[t]he right of

21  peaceable assembly is a right cognate to those of free speech and free press and is equally

22  fundamental' [because] [a]ssembly, like speech, is indeed essential 'in order to maintain the

23  opportunity for free political discussion'"); *Presser v. Illinois*, 116 U.S. 252, 267 (1886) (noting that

24  "the right peaceably to assemble was not protected by the clause referred to, unless the purpose of

25  the assembly was to petition the government for a redress of grievances"); *see also Lankster v.*

26  *Williams*, No. 11-00434-WS-B, 2012 U.S. Dist. LEXIS 37490, at *13 (S.D. Ala. Mar. 5, 2012)

27  (noting that plaintiff's complaint "is totally devoid of any facts that suggest that in visiting the

28  [school] athletic field, [plaintiff] was seeking to enter or maintain an intimate relationship with

**United States District Court**
For the Northern District of California

1  anyone or that he was seeking to assemble in order to combine his voice with others[;] instead,

2  [plaintiff] alleges that he was on the athletic field to hit golf balls"); *Van Deelen v. Johnson*, 535 F.

3  Supp. 2d 1227, 1232 (D. Kan. 2008) (stating that "the right of association and the right of assembly

4  protect an individual's ability to join with others or engage in group effort for a common purpose");

5  *cf. McDonald v. Smith*, 472 U.S. 479, 485 (1985) (noting that the First Amendment rights – *i.e.*, to

6  speak, publish, assemble, and petition – "are inseparable, and there is no sound basis for granting

7  greater constitutional protection to statements made in a petition to the President than other First

8  Amendment expressions"); *United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222

9  (1967) (stating that "the rights to assemble peaceably and to petition for a redress of grievances are

10  among the most precious of the liberties safeguarded by the Bill of Rights" and that "[t]hese rights . .

11  . are intimately connected, both in origin and in purpose, with the other First Amendment rights of

12  free speech and free press" – although not identical rights, they are "inseparable" rights).

13      The Court therefore dismisses the § 1983 claim against all Defendants to the extent it is

14  based on the right to assemble. To the extent the § 1983 claim is based on the right to contract, it is

15  dismissed as to Ms. Holland, Mr. King, and Mr. Grech. Mr. Jefferson has leave to amend. The §

16  1983/contract claim against Mr. Gonce and the City shall be permitted to proceed.

17  E.      State Law Claims

18      With respect to the state law claims – *i.e.*, the claims for violation of California Civil Code §

19  51 and negligent hiring/supervision – Defendants make challenges on the merits and further argue

20  that there is a bar to the claims based on the failure to comply with the California Tort Claims Act

21  ("CTCA"), in particular, the claim presentation requirement. The Court's analysis here largely

22  focuses on the CTCA.

23      With certain exceptions not applicable here, "no suit for money or damages may be brought

24  against a public entity on a cause of action for which a claim is required to be presented . . . until a

25  written claim therefor has been presented to the public entity." Cal. Gov't Code § 945.4. Here, Mr.

26  Jefferson claims that he substantially complied with the CTCA's claim presentation requirement, *see*

27  *Connelly v. Count of Fresno*, 146 Cal. App. 4th 29, 38 (2006) (discussing doctrine of substantial

28  compliance), "in that he has supplied sufficient information by email in March 2011; by letter in

1    June 2011; and during face-to-face meetings with some of the defendants and a CITY attorney."

2    SAC ¶ 15.  Mr. Jefferson also claims that Defendants are estopped from relying on the claim

3    presentation requirement as a bar, because "they misled [him] by misrepresenting the

4    appropriateness of the claim forms provided" and "acted as if [they] had sufficient information to

5    reasonably enable [the] CITY to make an adequate investigation of the merits of the claim and settle

6    it without the expense of a lawsuit, which is evidenced by its subsequent investigation of [Mr.

7    Jefferson's] claims."  SAC ¶ 16.  *See State of Cal. v. Superior Court*, 32 Cal. 4th 1234, 1245 (2004)

8    (stating that "a plaintiff may arguably be able to satisfy the claim presentation requirement by

9    alleging an appropriate excuse, such as equitable estoppel").

10          For purposes of resolving this motion, the Court need only address one argument made by

11   Defendants regarding the claim presentation requirement – *i.e.*, that Mr. Jefferson's arguments of

12   substantial compliance and estoppel have no viability because Mr. Jefferson did not direct his

13   complaints to the proper person.  In support of this position, Defendants rely on *DiCampli-Mintz v.*

14   *County of Santa Clara*, 55 Cal. 4th 983 (2012), a decision issued by the California Supreme Court in

15   December 2012.[1]

16          In *DiCampli-Mintz*, the California Supreme Court addressed the scope of California

17   Government Code § 915, which "establishes the manner of delivery of a claim against the

18   government."  *Id.* at 986.  Section 915(a) "requires that a claim be presented to a local public entity

19   by '[d]elivering it to the clerk, secretary or auditor,' or by mailing it to one of these officials 'or to

20   the governing body.'"  *Id.*  Section 915(e), however, provides that "a misdirected claim 'shall be

21   *deemed* to have been presented in compliance' with section 915 if '[i]t is actually received by the

22   clerk, auditor or board of the local public entity.'"  *Id.* (emphasis in original).

23          The plaintiff in *DiCampli-Mintz* was injured during a surgery performed on her at a hospital

24   owned and operated by Santa Clara County.  She retained an attorney who sent a letter to the

25

26          [1] The Court notes that Defendants did not cite this decision until their reply brief, even
though they could have cited it as a part of their opening brief.  It also notes that Defendants did not
27   clearly make the argument of improper delivery in its opening brief (or even in its reply brief
because the citation to *DiCampli* was simply made in passing).  *See* Reply at 1.  Thus, arguably, the
Court should not entertain the argument.  The Court, however, shall nevertheless address the
28   argument because it clearly has merit.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  hospital (its risk management department) and the doctors who performed the surgery stating that

2  she intended to file suit for damages.  The attorney did not include in the letter a request for it to be

3  forwarded to any of the statutorily designated recipients denoted in § 915.  *See id.* at 987.  It was

4  "undisputed that the letter was never personally served or presented, nor was it mailed to the county

5  clerk or the clerk of the board."  *Id.*

6      The attorney's letter was received by the County's risk management department.

7  Subsequently, an employee of the County's risk management department called the plaintiff's

8  counsel.

9          According to plaintiff's counsel, [the employee] acknowledged receipt
10         of the letter; orally opined that service on [the hospital] required a tort
           claim which was late; questioned whether a tort claim was required as
11         to [the doctors] and indicated that he would look into that; stated that
           plaintiff had an interesting case; mentioned a physical condition that
12         put plaintiff at risk; and provided the name of the attorney handling
           the County's defense.  [The employee] did not mention that the letter
13         failed to satisfy section 915's delivery requirements.  Plaintiff never
           received written notice that her claim was untimely or presented to the
14         wrong party.

15  *Id.* at 988.

16      During pretrial proceedings, the County argued that the plaintiff had failed to comply with

17  the CTCA because her claim was never presented to or received by a statutorily designated recipient

18  as required by § 915.  In response, the plaintiff argued that she had substantially complied with the

19  CTCA through her attorney's letter, which was delivered to and received by the risk management

20  department – "the county department most directly involved with the processing and defense of tort

21  claims against the County."  *Id.* at 989.

22      On appeal before the California Supreme Court, the Court rejected the substantial

23  compliance argument, noting that § 915 by "plain language" required either presentation to one of

24  the statute's designated recipients or actual receipt of notice by a proper recipient.  *Id.* at 992.

25          Section 915(a)(1) reflects the Legislature's intent to precisely
           identify those who may receive claims on behalf of a local public
26         entity.  Section 915(e)(1) reflects the Legislature's intent that a
           misdirected claim will satisfy the presentation requirement if the claim
27         is "actually received" by a statutorily designated recipient.  Thus,
           compliance with section 915(e)(1) requires actual receipt of the
28         misdirected claim by one of the designated recipients.  If an

11

**United States District Court**

For the Northern District of California

1
2
3

> appropriate public employee or board never receives the claim, an undelivered or misdirected claim fails to comply with the statute. This straightforward construction honors the statutory language and is consistent with the purpose of the claims statutes.

4    *Id.* at 992-93.  The Court also noted that this interpretation was consistent with the legislative

5    history. *See id.* at 993.  Significantly, the Court rejected a lower appellate court holding that § 915

6    could be satisfied if a claimant were to serve a party who has a duty to notify one of the statutorily

7    designated recipients (such as but not limited to a municipal attorney).  "'[B]y focusing on the duty

8    of  a public employee in receipt of a claim to forward the claim to the proper agency, [the lower

9    appellate court] inappropriately shifts responsibility for filing a claim with the proper official or

10   body from the claimant to the public entity.'"  *Id.* at 996.  The Court added that, if the lower court's

11   ruling were followed, much uncertainty would be introduced "about how and where claims must be

12   delivered" which would be "contrary to the [CTCA's] goal of eliminating uncertainty in the claims-

13   presentation requirements."  *Id.* at 997.

14          Thus, after *DiCampli-Mintz*, either there must be strict compliance with § 915(a) or the only

15   way to "substantially comply" with § 915(a) is if there is actual receipt of the misdirected claim by

16   one of the statutorily designated recipients (*i.e.*, § 915(e)).

17          In the case at bar, there is no dispute that the March 2011 e-mail and June 2011 letter were

18   not sent to the City's clerk, secretary, auditor, or governing board of the local public entity. *See*

19   Docket No. 36 (Defs.' RJN, Ex. B) (March 2011 e-mail sent to Ms. Holland and Mr. King); Docket

20   No. 36 (Defs.' RJN, Ex. C) (June 2011 letter sent to Ms. Holland, Mr. King, Mr. Gonce, and City

21   Attorney).[2]  Nor is there any allegation that the March 2011 e-mail or June 2011 letter was actually

22   received by one of § 915's statutorily designated recipients.  Thus, for these written

23   communications, Mr. Jefferson cannot claim either strict compliance under § 915(a) or even

24   compliance as permitted by § 915(e).

25

26
27
28
---
[2]  The Court may take judicial notice of the e-mail and letter under the incorporation by reference doctrine.  Under that doctrine, a court "may consider 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Dunn v. Castro*, 621 F.3d 1196, 1205 n.6 (9th Cir. 2010). Here, Mr. Jefferson has made specific reference to the March 2011 e-mail and June 2011 letter in his complaint, and he has not contested the authenticity of the documents.

**United States District Court**
For the Northern District of California

1    As for the "face-to-face meetings" referred to by Mr. Jefferson, he has specifically alleged

2   that they were "with some of the defendants and a CITY attorney." SAC ¶ 15. Thus, once again, he

3   cannot either strict compliance under § 915(a) or substantial compliance to the extent permitted

4   under § 915(e).

5    The Court acknowledges that Mr. Jefferson has not relied on a substantial compliance theory

6   alone but has also advanced an argument of excuse from compliance based on equitable estoppel.

7   The problem here is that *DiCampli-Mintz* puts limitations on any estoppel argument. As noted

8   above, in *DiCampli-Mintz*, an employee from the County's risk management department responded

9   to the letter from the plaintiff's attorney, engaged in a substantive discussion with the attorney, but

10   never said anything about the claim being presented to the wrong party. In spite of these facts, the

11   California Supreme Court still held in the County's favor.

12    In light of *DiCampli-Mintz*, Mr. Jefferson's first claim of estoppel based on Defendants'

13   "act[ing] as if [they] had sufficient information to reasonably enable [the] CITY to make an

14   adequate investigation of the merits of the claim and settle it without the expense of a lawsuit," SAC

15   ¶ 16, cannot be maintained.

16    As for Mr. Jefferson's second claim of estoppel – *i.e.*, because Defendants made

17   misrepresentations about "the appropriateness of the claim forms provided," SAC ¶ 16 – the Court

18   does not find, at least at this juncture, that *DiCampli-Mintz* is a bar because, here, Mr. Jefferson

19   seems to be asserting that he was given incorrect information about the claim form which led him

20   not to fill out the form at all. Such a claim of estoppel was not at issue in *DiCampli-Mintz*.

21    Nevertheless, there is insufficient information in the complaint as pled to make the second

22   estoppel theory plausible. There are no allegations about what exactly Mr. Jefferson was told about

23   the claim forms and by whom. At the hearing, Mr. Jefferson suggested that he was told that the

24   claim form could be used only if his claim was less than $10,000, but he does not identify who told

25   him this. Moreover, the evidence of record at least does not reflect that Mr. Jefferson was given any

26   misinformation by any of the individual defendants. *See, e.g.*, Docket No. 36 (Defs.' RJN, Ex. D)

27   (letter in response to Mr. Jefferson's June 2011 letter, attaching a claim form which does not put a

28   $10,000 limit).

13

**United States District Court**
For the Northern District of California

1    Accordingly, the Court dismisses the state law claims because there are insufficient

2 allegations of compliance under § 915(a) or compliance under § 915(e).  In addition, *DiCampli-*

3 *Mintz* forecloses one estoppel theory, and there are insufficient allegations to support the second

4 estoppel theory.  The Court, however, shall give Mr. Jefferson leave to amend with certain restraints.

5    First, Mr. Jefferson cannot try to cure the § 915 deficiency for the March 2011 e-mail (*i.e.*,

6 allege actual receipt under § 915(e)) because that e-mail does not substantially comply with other

7 requirements of the CTCA.  Most notably, the e-mail makes only a passing reference to the

8 possibility of money damages, *see Loehr v. Ventura Comm. Coll. Dist.*, 147 Cal. App. 3d 1071, 1083

9 (1983) (finding no substantial compliance because "[t]he only mention of damages appears as a

10 passing reference to the availability of such relief under the federal Civil Rights Act"), and does not

11 sufficiently make clear that, if the claim is not satisfied, there will be litigation.  *See Green v. State*

12 *Ctr. Comm. Coll. Dist.*, 34 Cal. App. 4th 1348, 1358 (199) (stating that, in order to be deemed a

13 claim, a written document must "make it readily discernible . . . that the intended purpose [of the

14 communication] is to convey the assertion of a compensable claim against the [public] entity which,

15 if not otherwise satisfied, will result in litigation").

16    Second, Mr. Jefferson cannot try to cure the § 915 deficiency for the face-to-face meetings

17 because those meeting do not comply or substantially comply with other requirements of the CTCA.

18 Most notably, California Government Code § 945.4 requires that there be a written claim, and Mr.

19 Jefferson has not submitted any authority establishing that there can be substantial compliance via

20 an oral claim at a meeting.

21    Third, to the extent Mr. Jefferson can, in good faith, allege compliance under § 915(e) for the

22 June 2011 letter, that letter can be a predicate for the § 51 claim only and not the negligence claim

23 because nothing in the letter suggests negligence on the part of the City.  Furthermore, the letter

24 implicates only conduct by Mr. Gonce, not the other individual defendants.  *See Stockett v.*

25 *Association of Cal. Water Agencies Joint Power Ins. Auth.*, 34 Cal. 4th 441, 447 (2004) (stating that

26 claim is "'vulnerable . . . if it alleges a factual basis for recovery which is not fairly reflected in the

27 written claim'"); *see also Stevenson v. San Francisco Hous. Auth.*, 24 Cal. App. 4th 269, 278 (1994)

28 (examining whether allegations made in the complaint were "based on a different set of facts from

14

**United States District Court**
For the Northern District of California

1 those set out in the claim"). Finally, the letter implicates only conduct that took place within six

2 months prior to the June 2011 letter.[3] *See* Cal. Gov't Code § 911.2 (providing that "[a] claim

3 relating to a cause of action for death or for injury to person or to personal property . . . shall be

4 presented as provided in Article 2 . . . not later than six months after the accrual of the cause of

5 action").

6         Finally, to the extent Mr. Jefferson seeks to replead his second theory of estoppel, he must

7 address not only the deficiencies identified above but also make clear whether that estoppel theory

8 gives him the right to pursue the § 51 and/or negligence claims. For example, he must be able to

9 include good faith allegations establishing that he made clear his intent to sue for discrimination *and*

10 for negligent hiring/supervision and that he conveyed that intent to sue on *both* claims to an

11 employee/agent of the City. Furthermore, to the extent Mr. Jefferson asserts the negligence claim,

12 he must include allegations establishing that the liability of the City is vicariously based on the

13 actions of an employee rather than its own negligence unless he identifies a statutory basis for a

14 direct negligence claim. *See* Cal. Gov't Code § 815.2 (providing that "[a] public entity is liable for

15 injury proximately caused by an act or omission of an employee of the public entity within the scope

16 of employment").

### III. CONCLUSION

18        For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to

19 dismiss. More specifically:

20       (1) The Title II claim against Ms. Holland, Mr. King, and Mr. Grech is dismissed without

21 prejudice. Mr. Jefferson has leave to amend.

22       (2) The § 1981 claim against Ms. Holland, Mr. King, and Mr. Grech is dismissed without

23 prejudice. Mr. Jefferson has leave to amend.

24       (3) The § 1983 claim against all Defendants based on the right to assemble is dismissed,

---

[3] Conduct post-June 2011 could potentially be implicated as well. The California Supreme Court implicitly endorsed this approach in *Stockett* by citing approvingly "*Baker v. Children's Hospital Medical Center* (1989) 209 Cal. App. 3d 1057, 1065 [257 Cal. Rptr. 768] [investigation of administratively charged instances of discrimination 'would lead to the investigation of *subsequent* discriminatory acts undertaken by respondents in retaliation for appellant's filing an internal grievance']." *Stockett*, 34 Cal. 4th at 449-50 (emphasis added).

United States District Court

For the Northern District of California

1    and with prejudice.  The § 1983 claim against Ms. Holland, Mr. King, and Mr. Grech based on the

2    right to contract is dismissed without prejudice.  Mr. Jefferson has leave to amend as to any other

3    viable theory under § 1983.

4           (4)     The state law claims for violation of § 51 and negligent hiring/supervision are

5    dismissed without prejudice.  Mr. Jefferson has leave to amend.

6           (5)     Defendants' request that Mr. Jefferson provide a more definite statement about the

7    policy or policies that purportedly gave Mr. Gonce "exclusive, undivided control over who would be

8    permitted to contract for use of [the] FTC," SAC ¶ 19, is granted.  The more definite statement may

9    be included as part of the amended complaint.

10          Any amended complaint shall be filed within three weeks of the date of this order.

11          This order disposes of Docket No. 55.

12

13          IT IS SO ORDERED.

14

15   Dated:  April 23, 2013

16

17                                _____
                              EDWARD M. CHEN
                              United States District Judge

18

19

20

21

22

23

24

25

26

27

28