**United States District Court**
For the Northern District of California

1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                   NORTHERN DISTRICT OF CALIFORNIA

7

8   WALTER JEFFERSON,                          No. C-12-0926 EMC

9                    Plaintiff,

                                               **ORDER GRANTING PLAINTIFF'S**
10          v.                                 **MOTION FOR THE COURT'S REVIEW**
                                               **OF TAXATION OF COSTS AND**
11   CITY OF FREMONT, *et al.*,                **DENYING TAXATION OF COSTS**

12                   Defendants.               **(Docket No. 124)**
    _____/

13

14

15

16          Pending before the Court is Plaintiff Walter Jefferson's motion for the Court's review of the

17   clerk's taxation of costs.  Docket No. 124.  Having reviewed the parties' submissions, the Court

18   finds this matter suitable for resolution without oral argument.  Fed. R. Civ. P. 78(b); Civ. L.R.

19   7-1(b).  For the reasons discussed herein, the Court **GRANTS** Jefferson's request for review and

20   **DENIES** recovery of costs in this case.

21                  I.  <u>FACTUAL & PROCEDURAL BACKGROUND</u>

22          Plaintiff Walter Jefferson, a pro se litigant, filed suit against the City of Fremont, the

23   Fremont Tennis Center ("FTC"), and individual Jeff Gonce, alleging that Defendants subjected him

24   to discriminatory treatment in connection with his use of the FTC.  Following years of active

25   litigation, the Court granted summary judgment against Jefferson.  Docket No. 118.

26          Following entry of judgment, the Defendants timely filed a bill of costs.  Docket No. 120.

27   Jefferson filed two initial responses to the Defendants' bill of costs.  Docket Nos. 121, 122.

28   Pursuant to Federal Rule of Civil Procedure 54, the clerk taxed costs after Mr. Jefferson filed these

initial responses.  Docket No. 123.  Applying Civil Local Rule 54-3(c), the clerk reduced

Defendants' bill of costs by eliminating expenses that are not recoverable under this Court's local

rules.  *Id.*  Consequently, the amount of taxed costs is $10,223.60.[1]  *Id.*  Following the clerk's

taxation of costs, Jefferson filed the pending motion for the Court's review.[2]  Docket No. 124.

## II.   DISCUSSION

A.    Legal Standard

Rule 54 provides:

> Unless a federal statute, these rules, or a court order provides
> otherwise, costs – other than attorney's fees --should be allowed to the
> prevailing party. [. . .]  The clerk may tax costs on 14 days' notice. On
> motion served within the next 7 days, the court may review the clerk's
> action.

Fed R Civ Proc 54(d)(1).[3]  While Rule 54 imposes a "presumption" in favor of awarding costs to

prevailing parties, the Court has discretion to consider whether that presumption is appropriate for

the particular circumstances of a case.  *See Ass'n of Mexican-Am. Educators v. State of California,*

231 F.3d 572, 591 (9th Cir. 2000) (*en banc*).

The Ninth Circuit, sitting *en banc,* has approved the following non-exhaustive list of

considerations for the Court to weigh: (1) the losing party's limited financial resources; (2)

---

[1] The Court has reviewed Defendants' bill of costs.  A substantial portion of the taxed costs appears to concern service of non-party deposition subpoenas.  Although not raised by Mr. Jefferson, there is a substantial doubt as to whether costs connected with deposition subpoenas (in contrast to costs of service of process by the Marshal) are recoverable under this Court's Local Rules.  *Carlson v. Century Sur. Co.,* No. C 11-00356 SI, 2012 WL 2602732, at *2 (N.D. Cal. July 5, 2012); *Velasquez v. City of Santa Clara,* No. 5:11-CV-03588-PSG, 2014 WL 4748429, at *3 (N.D. Cal. Sept. 24, 2014).

[2] "[C]ourts must generally construe pro se pleadings liberally."  *Ramirez v. Galaza,* 334 F.3d 850, 854 (9th Cir. 2003); *see also Zakarian v. Option One Mortgage Corp.*, 642 F. Supp. 2d 1206, 1214 (D. Haw. 2009) ("[C]ourts have a duty to construe pro se pleadings liberally, including pro se motions as well as complaints.").  Although Jefferson's request was entitled "Response to Bill of Costs (Request to Deny Bill for Taxation of Costs)," the Court has construed it as a motion for the Court's review in light of Jefferson's status as a pro se litigant and his evident intent to request review.

[3] The Court notes that Jefferson's motion was filed ten days after the clerk taxed costs. Nonetheless, the Court will consider Jefferson's motion, because (1) Defendants raise no objection as to the timeliness of the January 23, 2015 motion; (2) the time limit in Rule 54 is not jurisdictional, *see In re Paoli R.R. Yard PCB Litig.,* 221 F.3d 449, 459 (3d Cir. 2000), *as amended* (Sept. 15, 2000); and (3) the three-day delay is *de minimis* and creates no prejudice.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

misconduct on the part of the prevailing party, (3) the "chilling effect" on prospective litigants; (4) whether the case "involves issues of substantial public importance, specifically educational quality, interracial disparities in economic opportunity, and access to positions of social influence;" (5) great economic disparity between the parties; (6) whether the issues in the case are close and difficult; and (7) whether Plaintiff's' case, although unsuccessful, had some merit.  *Id.* at 592 (internal quotations omitted); *Escriba v. Foster Poultry Farms, Inc.,* 743 F.3d 1236, 1247-48 (9th Cir. 2014).  Many of the factors are relevant here and are discussed herein.[4]

      1.    <u>The Substantial Public Importance of the Case</u>

A civil rights case brought to remedy discriminatory treatment in a place of public accommodation, even if brought by a single plaintiff, involves broader protections against racial discrimination.  Consequently, the Court finds such issues to be of substantial public importance. *See Escriba*, 743 F.3d at 1248 (finding no error where district court concluded that FMLA action brought by single plaintiff raised issues of substantial public importance, because, among other things, FMLA issues concern protection of civil rights for women in the workplace).

The nature of Jefferson's claims shows the public importance of this action.  This case involved civil rights claims under Title II of the Civil Rights Act, under Section 1981, and under Section 1983.  Under Title II, a plaintiff cannot obtain damages; "[i]f he obtains an injunction, he does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority."  *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402 (1968).  Moreover, the Court finds that Jefferson brought claims that sought to remedy "interracial disparities in economic opportunity" under Section 1981, raising issues of substantial public importance.  *Ass'n of Mexican-Am. Educators,* 231 F.3d at 592.  The Court concludes that the substantial public importance of the civil rights claims in this case weighs against the award of costs.

      2.    <u>The Closeness and Difficulty of The Issues in The Case</u>

The Court observes that Jefferson's claims survived (at least in part) through multiple rounds

---

[4] Jefferson has accused Defendants' counsel of various misconduct.  The Court has considered the arguments Jefferson has raised, has reviewed the underlying documents, and finds that Jefferson has not substantiated his allegations of wrongdoing against defense counsel.

United States District Court
For the Northern District of California

of motions to dismiss.  *See* Docket Nos. 28; 63.  Furthermore, the Court finds that the issues raised by Defendants' ultimately successful motion for summary judgment were close.  The Court granted summary judgment largely due to the challenges of demonstrating *Monell* liability.  Docket No. 118. Resolution of whether *Monell* liability applied involved consideration of complex questions of law and fact, including questions regarding who possessed final policy-making authority for the City of Fremont.  These were close and hotly-litigated issues.  *See Escriba*, 743 F.3d at 1248 (holding district court appropriately concluded that case was close where "the case addresses an important legal question that turns on the careful evaluation of witness testimony and circumstantial evidence").

Moreover, Jefferson's basic claims of discrimination cannot be said to be frivolous.  In connection with his motion for summary judgment, Jefferson proffered deposition testimony from another minority tennis player who testified that minority players experienced issues with respect to booking reservations while other groups received "concessions."  Docket No. 118 at 9-10. Ultimately, such evidence was not enough to create a material question of fact to withstand summary judgment.  *Id.*  Among other things, as the Court discussed in its order, *Monell's* prohibition on *respondeat superior* liability, as applied in this case, meant that Jefferson could not prevail even if there was evidence of purposeful discriminatory conduct by Jeff Gonce.  *Id.* at 18.  The Court concludes that the third-party testimony (in addition to Mr. Jefferson's), while insufficient to establish *Monell* liability, nevertheless suggests that Jefferson's claims had support and were not frivolous.

3.    The Chilling Effect on Future Similar Actions

"Without civil rights litigants who are willing to test the boundaries of our laws, we would not have made much of the progress that has occurred in this nation since *Brown v. Board of Educ.,* 347 U.S. 483 (1954)."  *Stanley,* 178 F.3d at 1080.  Consequently, it would be an abuse of discretion for the Court not to consider the potential chilling effect that flows from "the imposition of . . . high costs on losing civil rights plaintiffs of modest means."  *Id.*

In this case, the Court finds that the chilling effect from an award of costs would be substantial.  For example, under Title II, where a plaintiff cannot obtain damages and acts as private

United States District Court
For the Northern District of California

1    attorney general, there is little private incentive to proceed with a lawsuit.  Such a plaintiff

2    undertakes significant responsibilities.  This action amply demonstrates the burdens of bringing such

3    litigation.  Here, over the course of two years, there was substantial briefing, the parties attended

4    multiple hearings and conferences, the Defendants deposed the Plaintiff for three days, and (as

5    reflected in the bill of costs) the parties expended significant time and money over the course of

6    numerous depositions. The Court finds that awarding over $10,000 in costs to Defendants would

7    discourage a prospective civil rights plaintiff from taking on the already considerable burdens of

8    litigating these important issues.

9          4.    Plaintiff's Limited Financial Resources

10          It is also an abuse of discretion for a district court not to consider "the financial resources of

11   the plaintiff and the amount of costs in civil rights cases."  *Stanley v. Univ. of S. California,* 178 F.3d

12   1069, 1079 (9th Cir. 1999); *accord Ass'n of Mexican-Am. Educators,* 231 F.3d at 592.  In light of its

13   obligation to consider financial resources, the Court ordered Jefferson to provide a supplemental

14   declaration concerning his financial resources.  Docket No. 132.

15          The Court concludes that Jefferson has evidenced financial hardship.  In one of his initial

16   responses to Defendants' bill of costs, Jefferson represented that he is "currently under federal

17   bankruptcy protection and any additional costs would put an extreme hardship on me and my

18   family."  Docket No. 122.  While Defendants are correct that Jefferson did not initially attach any

19   documents evidencing this hardship, judicially noticeable documents reflect that the matter *In Re*

20   *Walter D Jefferson* is pending in the United States Bankruptcy Court for the Northern District of

21   California, Chapter 13 Case No: 10-72495-CN 13.[5]  Further, the Court has reviewed Jefferson's

22   supplemental submission and concludes that Jefferson does not have sufficient assets or cash flow

23   with which to pay costs.  Jefferson supports multiple dependants with limited income from

24

25          [5] Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the existence of

26   the docket in the Bankruptcy Court, which is an undisputed matter of public record.  Fed. R. Evid.
     201(b), (c)(1); *see also United States v. Martinez,* 771 F.3d 672, 674 n.1 (9th Cir. 2014) (noticing

27   court records); *Trigueros v. Adams,* 658 F.3d 983, 987 (9th Cir. 2011) (finding a court "may take
     notice of proceedings in other courts, both within and without the federal judicial system, if those

28   proceedings have a direct relation to matters at issue." (quotation omitted)); *Lee v. City of Los
     Angeles,* 250 F.3d 668, 689-90 (9th Cir. 2001).

unemployment compensation.  He appears to be under significant financial strain.

In light of Jefferson's active bankruptcy matter and the evident limitations on his financial resources, the Court finds that Jefferson has established that costs of over $10,000 would likely impose substantial financial hardship.  *See, e.g., Finley v. Hartford Life & Acc. Ins. Co.,* No. C 06-06247 CW, 2011 WL 332673, at *3 (N.D. Cal. Jan. 31, 2011) (exercising discretion to disallow certain costs where financial hardship was indicated by, among other things, documents related to Plaintiff's bankruptcy).

5.     The Economic Disparity between The Parties

Consistent with the Court's finding that Jefferson would face financial hardship from an award of the costs sought, the Court finds that there is significant economic disparity between the parties.  Just as there was a "great economic disparity" between the plaintiffs (individuals and nonprofit organizations) and the State of California in *Association of Mexican-American Educators,* the Court concludes that an individual in bankruptcy has substantially more limited resources than the City of Fremont.  *Id.*, 231 F.3d at 592.

## III.   CONCLUSION

For the foregoing reasons, and in view of the totality of the circumstances in this case, the Court concludes that it would be inappropriate and inequitable to award Defendants costs.  *See Rivera v. NIBCO,* 701 F. Supp. 2d 1135, 1145 (E.D. Cal. 2010) (denying any award of costs, because "[f]or a low wage-worker, the threat of a $3,600 cost bill, representing approximately 14% of the annual income of Plaintiffs, is a significant disincentive").  Plaintiff's motion is **GRANTED.** Defendants shall not recover costs in this matter.

This order disposes of Docket No. 124.

IT IS SO ORDERED.

Dated:  March 19, 2015

_____
EDWARD M. CHEN
United States District Judge